## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| LAWRENCE BAILEY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 21-00844-LKG |
| | ) |
| THOMPSON CREEK WINDOW | ) Date:  October 29, 2021 |
| COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.       INTRODUCTION

Defendants, Thompson Creek Window Company ("TCWC") and Rick Wuest, have moved to compel arbitration and to stay or dismiss this putative class action matter, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  *See generally* Def. Mot., ECF No. 27; *see also* Def. Mem., ECF No. 27-1.  Plaintiffs have also moved for a hearing on defendants' motion.  Pl. Mot., ECF No. 30.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court:  (1) **GRANTS** defendants' motion to compel arbitration and to dismiss or stay this matter; (2) **DENIES-as-MOOT** plaintiffs' motion for a hearing; and (3) **DISMISSES** the complaint.

### II.      FACTUAL AND PROCEDURAL BACKGROUND

#### A.      Factual Background

Plaintiffs Lawrence Bailey and William Estrada are residents of the State of Maryland and the Commonwealth of Virginia respectively, and the purchasers of windows sold by TCWC.  Am. Compl. at ¶¶ 7-8, ECF No. 23.  In the amended complaint, plaintiffs allege that TCWC and its owner, Rick Wuest, have misrepresented the energy efficiency of TC 900/7900 and 7800 St. Claire series double-pane windows sold to plaintiffs and other similarly situated individuals, in violation of, among other things, the Maryland Consumer Protection Act, Md. Code Ann., Com.

Law §§ 13-101 to -501, and the Virginia Consumer Protection Act of 1977, Va. Code Ann. §§ 59.1-196 to -207.  *Id.* at ¶¶ 1-6.

It is undisputed that, on February 28, 2016, plaintiff Lawrence Bailey entered into a contract with TCWC for the purchase of a TC7900 picture window to be installed at his property located in Waldorf, Maryland.  *See* Def. Mot. Ex. 2-A; *see also* Am. Compl. at ¶ 7.  It is also undisputed that, on February 25, 2020, plaintiff Lawrence Bailey entered into another contract with TCWC for the purchase of eight 7900DH-7900 windows and one 7900 picture window also to be installed at his property located in Waldorf, Maryland.  *See* Def. Mot. Ex. 2-B; *see also* Am. Compl. at ¶ 7.

The parties also agree that, on October 9, 2012, plaintiff William Estrada entered into a contract with TCWC for the purchase of two 7900DH-7900 windows to be installed at his property located in Leesburg, Virginia.  *See* Def. Mot. Ex. 2-C to 2-D; *see also* Am. Compl. at ¶ 8.  These contracts are collectively referred to herein as the "TCWC Contracts."

The TCWC Contracts contain the following language regarding arbitration:[1]

**Arbitration of Disputes**:  Contractor and Owner(s) agree that any and all disputes, claims, or controversies (hereafter referred to as a "Claim") arising under or relating to this Agreement and any related documents, loans, security instruments, accounts, or notes, including by way of example and not as a limitation:  (i) the relationships resulting from this Agreement and the transactions arising as a result thereof; (ii) the terms of this Agreement; or (iii) the validity of this Agreement or the validity or enforceability of this arbitration provision shall be subject to binding arbitration to be determined by one arbitrator, in accordance with and pursuant to the then prevailing Commercial Rules of the American Arbitration Association ("AAA"), to be held and arbitrated in the judicial district in which Owner(s) resides.  Owner(s) agrees that Owner(s) will not assert a Claim on behalf of, or as a member of, any group or class.   The findings of the arbitrator shall be final and binding on all parties to this Agreement.  Each party shall be responsible for its own fees and costs, unless otherwise determined by the arbitrator.  The Agreement to arbitrate, and any award, finding or verdict of or from the arbitration, will be specifically enforceable under the prevailing law of any court having jurisdiction.  The party asserting a Claim shall file a notice of the demand for arbitration with the other party to this Agreement and with

---

[1] Defendants have submitted copies of the TCWC Contracts as exhibits to their motion.  *See* Def. Mot. Exs. 2-A to 2-D.  Plaintiffs do not dispute that they signed these contracts.  *See* Pl. Resp. at 2, ECF No. 28 (not disputing the veracity of the TCWC Contracts submitted with defendants' motion).

> AAA.  The demand for arbitration shall be made within a reasonable time after the Claim in question has arisen, and in no event shall any such demand be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations.  Any arbitration proceeding brought under this Agreement, and any award, finding, or verdict of or from such proceeding shall remain confidential between the parties and shall not be made public.

Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.  The TCWC Contracts also include the following language regarding the parties' intent to arbitrate:

> Both Contractor and Owner(s) are hereby agreeing to choose arbitration, rather than litigation or some other means of dispute resolution, to address any grievances or alleged grievances.  The parties believe this will allow for a faster and more cost-effective method of addressing a Claim.  By entering into this Agreement and this arbitration provision, both parties are giving up their constitutional right to have any dispute decided in a court of law before a jury, and instead are accepting the use of arbitration, other than as set forth immediately below.

Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.  In addition, the TCWC Contracts contain the exception below to the parties' agreement to choose arbitration:

> Notwithstanding anything herein to the contrary, Contractor retains the option to use judicial or non-judicial relief to enforce the monetary obligation represented by this agreement.  Such judicial relief would take the form of a lawsuit.

Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.

### B.    Procedural History

Plaintiffs commenced this action on April 2, 2021.  *See* Compl., ECF No. 1.  On June 4, 2021, plaintiffs filed an amended complaint.  *See* Am. Compl.

On June 21, 2021, defendants filed a motion to compel arbitration and to dismiss or to stay this matter, and a memorandum in support thereof.  *See generally* Def. Mot.; Def. Mem.  On July 6, 2021, plaintiffs filed a response in opposition to defendants' motion.  *See generally* Pl. Resp.  On July 20, 2021, defendants filed a reply in support of their motion.  *See generally* Def. Reply, ECF No. 29.  Thereafter, plaintiffs filed a motion requesting a hearing on defendants' motion.  *See generally* Pl. Mot.

Defendants' motion to compel arbitration and to dismiss or stay this matter having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Fed. R. Civ. P. 56. *See, e.g.*, *Cherdak v. ACT, Inc*., 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute, . . . or where documents outside the pleadings must be considered") (internal citations omitted); *Owen v. CBRE, Inc*., No. 16-773, 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). But, the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003). And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id.*

### B.    The Federal Arbitration Act

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citations omitted). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And so, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys.*

*Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration.  *See* 9 U.S.C. § 4.  In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.*  The statute also provides that, when presented with such a petition, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.*  But, if the "making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof."  *Id.*

In addition, Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* § 3.  And so, this Court had recognized that the FAA provides two parallel methods for enforcing an arbitration agreement:  a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4.  *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation:  '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing).  And so, "where

the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"). In this regard, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[2]

In addition, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). But, "if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.* (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)). And so, in assessing the enforceability of an arbitration agreement containing a delegation clause, the Court first must decide whether a plaintiff has lodged a challenge against the delegation clause. *Id.* at 338

---

[2] The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc*., 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

(citation omitted).  If the Court concludes that a plaintiff "specifically challenged the enforceability of the delegation provision," the Court "then must decide whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'"  *Id.* (quoting *Minnieland*, 867 F.3d at 455).

In this regard, the Fourth Circuit has held that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'  This stay-of-litigation provision is mandatory."  *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)).[3]  The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001).  And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions.  *See, e.g., Willcock v. My Goodness! Games, Inc*., No. 16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Kabba v. Rent-A-Center*, No. 17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017), *aff'd*, 730 F. App'x 141 (4th Cir. 2018); *Phears v. LVNV Funding*, *LLC*, No. 20-2843, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

### C.    Applicable Maryland Law

When determining whether there is a valid arbitration agreement, courts in the Fourth Circuit "apply ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability."  *Muriithi*, 712 F.3d at 179 (citations omitted).  Maryland contract law applies here, because the parties do not dispute that plaintiff Lawrence Bailey entered into two contracts with TCWC in Maryland.[4]  Def. Mot. at 2; Pl. Resp. at 5.

The Court of Appeals of Maryland has held that, "[t]o be binding and enforceable, contracts ordinarily require consideration."  *Cheek v. United Healthcare*, 835 A.2d 656, 661

---

[3] The Fourth Circuit has explained that "application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."  *Galloway*, 819 F.3d at 84 (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)) (internal quotation marks omitted).

[4] The parties have not separately addressed the arbitration agreement contained in the TCWC Contract entered into by TCWC and plaintiff William Estrada.  *See generally* Def. Mem.; Pl. Resp.

(Md. 2003) (citations omitted); *see also Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992) (binding contracts "must be supported by consideration") (citation omitted).  Under Maryland law, "consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'"  *Cheek*, 835 A.2d at 661 (quoting *Harford Cty. v. Town of Bel Air*, 704 A.2d 421, 430 (Md. 1998)).  And so, the forbearance to exercise a right or pursue a claim can constitute sufficient consideration to support a contract under Maryland law.  *Id.* (citing *Chernick*, 610 A.2d at 774).

Relevant to this dispute, the Court of Appeals of Maryland has also held that "[a] promise becomes consideration for another promise only when it constitutes a binding obligation."  *Id.* Given this, absent a binding obligation, there is not sufficient consideration "to support a legally enforceable agreement."  *Id.*  And so, an illusory promise is not adequate consideration to support an enforceable contract, because while "[a]n illusory promise appears to be a promise, . . . it does not actually bind or obligate the promisor to anything."  *Id.* at 662.

Lastly, the Court of Appeals of Maryland has recognized that an unconscionable contract is "one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'"  *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005) (quoting *Unconscionability*, *Black's Law Dictionary* (8th ed. 2004)).  To be unconscionable, a contract must be both procedurally and substantively unconscionable.  *See, e.g.*, *id.* at 744; *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. Ct. Spec. App. 2007).  And so, the Fourth Circuit has explained that "[s]ubstantive unconscionability involves those one-sided terms of a contract from which a party seeks relief . . . , while procedural unconscionability deals with the process of making a contract—bargaining naughtiness."  *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir.1989) (internal quotation marks omitted).

## IV.    ANALYSIS

Defendants seek to compel arbitration, and to either stay or dismiss this putative class action matter, pursuant to the FAA.  *See generally* Def. Mot.; *see also* Def. Mem.  In this regard, defendants argue, among other things, that:  (1) the parties have expressly delegated the determination of arbitrability to the arbitrator; (2) the FAA governs this dispute and favors arbitration; and (3) the arbitration agreement at issue is enforceable with regards to all of

plaintiffs' claims.  *See* Def. Mem. at 6-22.  And so, defendants request that the Court compel arbitration and either stay or dismiss this matter.  *Id.* at 28-30.

     Plaintiffs counter that the delegation clause found in the TCWC Contracts is invalid, and thus, unenforceable.  Pl. Resp. at 5-11.  And so, they request that the Court deny defendants' motion.  *Id.* at 11.

     A careful review of the arbitration agreement—and, in particular, the delegation clause—found in the TCWC Contracts shows that these provisions are valid and enforceable under Maryland law.  And so, for the reasons that follow, the Court:  (1) **GRANTS** defendants' motion to compel arbitration and to dismiss or stay this matter; (2) **DENIES-as-MOOT** plaintiffs' motion for a hearing; and (3) **DISMISSES** the complaint.

### A.    The Court May Review The Validity Of The Delegation Clause

     As an initial matter, the Court may review whether the delegation clause contained in the TCWC Contracts is valid and enforceable.  The Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs*, 967 F.3d at 337 (quoting *Rent-A-Center*, 561 U.S. at 68-69).  And so, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration.  *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67).  But, if the claimant specifically attacks the validity of the delegation clause itself, as plaintiffs do here, the Court may consider the enforceability of the delegation clause.  *Id.*  Under such circumstances, the Court first must decide whether plaintiffs have lodged a challenge against the delegation clause.  *Id.*  If so, the Court then must decide whether the delegation clause is unenforceable "upon such grounds as exist at law or in equity." *Id.* (quoting *Minnieland*, 867 F.3d at 455).

     In this case, the arbitration agreement in the TCWC Contracts contains a delegation clause, which provides that:

> Contractor and Owner(s) agree that any and all disputes, claims, or controversies . . . arising under or relating to this Agreement and any related documents, loans, security instruments, accounts, or notes, . . . shall be subject to binding arbitration to be determined by one arbitrator, in

accordance with and pursuant to the then prevailing Commercial Rules of
the . . . AAA . . . .

Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.  The Court reads this delegation clause to "clearly
and unmistakably" delegate the threshold issue of arbitrability to the arbitrator.  *Gibbs*, 967 F.3d.
at 337; *see also David S. Brown Enters., Ltd. v. Affiliated FM Ins. Co.*, 509 F. Supp. 3d 460, 465
(D. Md. 2020) (internal quotations omitted) (stating that Maryland "follows the law of objective
contract interpretation," which provides that "[t]he written language embodying the terms of an
agreement will govern the rights and liabilities of the parties, irrespective of the intent of the
parties at the time they entered the contract").  But, because plaintiffs specifically challenge the
enforceability of the delegation clause, the Court will consider whether this clause is enforceable.
*Gibbs*, 967 F.3d. at 337.

### B.    The Parties Have Entered Into A Valid Arbitration Agreement

A careful review of the delegation clause makes clear that the parties have entered into a
valid and enforceable arbitration agreement.  In this case, the parties do not dispute that plaintiffs
entered into written contracts with TCWC that contain an arbitration agreement.  *See* Def. Mot.
Exs. 2-A to 2-D.  And so, the Court centers its analysis on whether the delegation clause, and
more broadly the arbitration agreement, set forth in the TCWC Contracts is valid and enforceable
under Maryland law.  *Gibbs*, 967 F.3d at 337-38 (noting that "challenges to the overall
arbitration agreement could also be specifically directed at the delegation provision");
*Minnieland*, 913 F.3d at 415 (explaining that this Court applies "ordinary state-law principles
that govern the formation of contracts and the federal substantive law of arbitrability," when
determining whether there is a valid arbitration agreement).  For the reasons that follow, these
provisions constitute a valid and enforceable agreement.

To be binding and enforceable under Maryland law, the arbitration agreement and
delegation clause at issue require mutual consideration.  *Cheek*, 835 A.2d at 661; *see also
Chernick* 610 A.2d at 774 (binding contracts "must be supported by consideration").  In this
regard, the Court of Appeals of Maryland has held that a promise becomes consideration for
another promise only when it constitutes a binding obligation.  *Cheek*, 835 A.2d at 661.  And so,
to be legally enforceable, the arbitration agreement and delegation clause must not be supported
by an illusory promise that lacks a binding obligation.  *Id*. at 662.

Here, the plain terms of the delegation clause and arbitration agreement make clear that the parties' agreement to arbitrate disputes is supported by mutual consideration. The delegation clause provides, in relevant part, that:

> Contractor and Owner(s) agree that any and all disputes, claims, or controversies . . . arising under or relating to this Agreement and any related documents, loans, security instruments, accounts, or notes, . . . shall be subject to binding arbitration to be determined by one arbitrator . . . .

Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. The arbitration agreement further provides that:

> Both Contractor and Owner(s) are hereby agreeing to choose arbitration, rather than litigation or some other means of dispute resolution, to address any grievances or alleged grievances. The parties believe this will allow for a faster and more cost-effective method of addressing a Claim. By entering into this Agreement and this arbitration provision, both parties are giving up their constitutional right to have any dispute decided in a court of law before a jury, and instead are accepting the use of arbitration, other than as set forth immediately below.

Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. The above language demonstrates that the parties mutually agree to arbitrate all claims that arise under, or relate to, the TCWC Contracts. Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. Notably, both parties acknowledge in the agreement that arbitration would be mutually beneficial, because arbitration "will allow for a faster and more cost-effective method of addressing a Claim." Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.

The delegation clause also makes clear that both parties "are giving up their constitutional right to have any dispute decided in a court of law before a jury, and instead are accepting the use of arbitration." Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. Given this, the plain terms of the arbitration agreement, and specifically the delegation clause, show that both parties' promises to arbitrate constitute mutually binding obligations. And so, the Court is satisfied that the delegation clause and the arbitration agreement are supported by mutual consideration. *Cheek*, 835 A.2d at 661.

The Court is also not persuaded by plaintiffs' argument that the delegation clause and arbitration agreement are invalid, because TCWC's promise to arbitrate is illusory. Pl. Resp. at 5-7. Plaintiffs correctly observe that the arbitration agreement contains an exception to the promise to arbitrate that permits TCWC to litigate claims seeking to enforce the monetary

obligation under the TCWC Contracts.[5]  *Id.* at 6.  But, the Court does not agree that this exception "wipe[s] away" TCWC's obligation to arbitrate, as plaintiffs suggest.  *Id.*

Rather, the arbitration agreement and the delegation clause make clear that TCWC remains obligated to arbitrate any other claims related to, or arising under, the TCWC Contracts. In this regard, defendants explain that TCWC remains obligated to arbitrate disputes regarding, among other things, compliance with local permits, inspections and zoning, compliance with the TCWC Contract's notice of cancellation provision, and service and warranty issues, under the terms of the arbitration agreement.  Def. Reply at 7-8.  As the Court of Appeals of Maryland has recognized, mutuality of consideration does not require an exactly even exchange of identical rights and obligations for a contract to be valid.  *Walther*, 872 A.2d at 748; *see also Owen*, 2016 WL 7033973, at *4.  And so, the fact that TCWC may litigate claims seeking to enforce the monetary obligation under the TCWC Contracts does not negate the consideration provided by TCWC in the arbitration agreement.  *See Walther*, 872 A.2d at 748; *Owen*, 2016 WL 7033973, at *4.

Plaintiffs' argument that the arbitration agreement and delegation clause are unconscionable is equally unavailing.  Pl. Resp. at 7-11.  To show that the arbitration agreement and delegation clause are unconscionable, plaintiffs must demonstrate both procedural and substantive unconscionability.  *Doyle*, 918 A.2d at 1274.  Plaintiffs argue that the arbitration agreement and delegation clause are procedurally unconscionable, because TCWC presented the TCWC Contracts as "take it or leave it" propositions.  Pl. Resp. at 9.  But, even if the Court were to accept plaintiffs' argument that these provisions are procedurally unconscionable, plaintiffs simply have not met their burden to show that the provisions are substantively unconscionable.

Plaintiffs contend that the arbitration agreement and delegation clause are substantively unconscionable, because:  (1) TCWC may sue plaintiffs in court to enforce the monetary obligation under the TCWC Contracts; (2) the arbitration agreement contains a confidentiality provision; (3) the arbitration agreement prohibits plaintiffs from bringing class action lawsuits;

---

[5] The arbitration agreement provides, in pertinent part, that, "[n]otwithstanding anything herein to the contrary, Contractor retains the option to use judicial or non-judicial relief to enforce the monetary obligation represented by this agreement.  Such judicial relief would take the form of a lawsuit."  Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.

and (4) the arbitration agreement requires each party to the agreement to bear its own costs. *Id.* at 9-11. But, as discussed above, the fact that TCWC may litigate a claim to enforce the monetary obligations under the TCWC Contracts does not negate TCWC's binding obligation to arbitrate all other claims related to the TCWC Contracts. *See Brendsel v. Winchester Constr. Co.*, 898 A.2d 472, 477-78 (Md. 2006); *Walther*, 872 A.2d at 748 (upholding arbitration agreements where certain claims may be litigated while other related claims, including counterclaims, must be arbitrated).

The Court also does not agree with plaintiffs that the confidentiality clause in the arbitration agreement renders this agreement substantively unconscionable. As plaintiffs correctly observe, the arbitration agreement requires that "[a]ny arbitration proceeding brought under this Agreement, and any award, finding, or verdict of or from such proceeding shall remain confidential between the parties and shall not be made public." Pl. Resp. at 10; *see also* Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. Several courts have upheld arbitration agreements containing similar confidentiality clauses. *See, e.g.*, *Carmax Auto Superstores, Inc. v. Sibley*, 215 F. Supp. 3d 430, 437 (D. Md. 2016) ("This Court finds nothing under Maryland law finding confidentiality requirements in arbitration agreements to be void as a matter of public policy."). And so, the presence of this confidentiality clause does not render the arbitration agreement substantively unconscionable.

Nor do the provisions in the arbitration agreement that prohibit class action lawsuits and require that each party bear its own costs, render this agreement substantively unconscionable. The arbitration agreement provides that "[e]ach party shall be responsible for its own fees and costs" and that the "[o]wner(s) agree[] that [the] [o]wners(s) will not assert a Claim on behalf of, or as a member of, any group or class." Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. Again, Maryland courts have found that such provisions are not unconscionable. *See Walther*, 872 A.2d at 750-51 ("Numerous courts, both federal and state, have rigorously enforced no-class-action provisions in arbitration agreements and found them to be valid provisions of such agreements and not unconscionable."). The Court also observes that the requirement in the arbitration agreement that each party bear its own costs applies equally to both parties. Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1. And so, plaintiffs have not shown that the delegation clause, or more broadly the entire arbitration agreement, are unconscionable. *See* Pl. Resp. at 7-11.

### C.      Dismissal Is Appropriate Pursuant To Delegation Clause

Because the Court concludes that the arbitration agreement and the delegation clause are valid and enforceable under Maryland law, dismissal of this matter is warranted.  *Gibbs*, 967 F.3d at 337 (quoting *Rent-A-Center*, 561 U.S. at 67) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration).  As discussed above, the delegation clause contained in the arbitration agreement clearly requires that "any and all disputes, claims, or controversies . . . arising under or relating to this Agreement . . . shall be subject to binding arbitration to be determined by one arbitrator, in accordance with and pursuant to the then prevailing Commercial Rules of the . . . AAA . . . ."  Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1.  And so, the Court must dismiss this action and compel the arbitration of plaintiffs' claims.[6]  *Gibbs*, 967 F.3d at 337 (citation omitted).

## V.     CONCLUSION

For the foregoing reasons, the Court:

> (1) **GRANTS** defendants' motion to compel arbitration and to dismiss or stay this matter;
>
> (2) **DENIES-as-MOOT** plaintiffs' motion for a hearing; and

---

[6] Because the Court reads this delegation clause to require that the arbitrator decide issues related to the scope of the arbitration agreement, the Court does not address whether plaintiffs' claims fall within the scope of the arbitration agreement.  *Gibbs*, 967 F.3d at 337 (citation omitted).  The Court observes, however, that the delegation clause covers "any and all disputes, claims, or controversies . . . arising under or relating to" the TCWC Contracts.  Def. Mot. Exs. 2-A at 2, 2-B at 2, 2-D at 1; *see also Choice Hotels*, 252 F.3d at 709-10 (holding that, in lieu of a stay of proceedings, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable").

(3) **DISMISSES** the complaint.

**IT IS SO ORDERED**.

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge